# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

## NO. 19-10765
_____

## UNITED STATES OF AMERICA,

### Plaintiff - Appellee,

## V.

## JEOPHREY RAUL MURRIETA

### Defendant - Appellant.
_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
_____

## INITIAL BRIEF OF APPELLANT
## CRIMINAL APPEAL
_____

Elon Berk, Esq.
CA Bar No. 209642
GUROVICH, BERK & ASSOC.
15250 Ventura Blvd., Suite 1220
Sherman Oaks, CA 91403
Tel:  818-205-1555
Fax: 818-205-1559
Email: eberk@crimlawla.com
ATTORNEY FOR APPELLANT

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 19-10765, United States of America v. JEOPHREY RAUL MURRIETA

Pursuant to 5TH CIR. RULES 28.2.1 and 35.2.1, the undersigned counsel of record certifies that the following listed person has an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    JEOPHREY RAUL MURRIETA, Defendant-Appellant.

2.    Mr. Stephen James Rancourt, Esq., AUSA

3.    Ms. Ann Howey, Esq., AUSA

4.    Mr. Kevin W. Willhelm, Esq., Trial Counsel for Defendant (CJA)

5.    The Hon. Samuel Ray Cummings, Senior United States District Judge

*/s/ Elon Berk*
ELON BERK
ATTORNEY FOR APPELLANT

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested. The issue raised in this appeal appears on the face of the record, and counsel believes that oral argument would not assist the Court in adjudicating this matter.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS............................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................. ii

TABLE OF CONTENTS.........................................................................................iii

TABLE OF AUTHORITIES....................................................................................iv

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF ISSUES .....................................................................................2

STATEMENT OF THE CASE.................................................................................3

SUMMARY OF THE ARGUMENT........................................................................8

ARGUMENT AND AUTHORITIES.......................................................................9

      I.     THE PRESENTENCE REPORT INCORRECTLY
           CALCULATED THE GUIDELINE
           SENTENCING RANGE........................................................................9

           A.     The trial court improperly overruled Murrieta's
                  objections to the presentence report's
                  calculation of the proper Guideline level...................................11

CONCLUSION.......................................................................................................14

CERTIFICATE OF SERVICE ...............................................................................15

CERTIFICATE OF COMPLIANCE.......................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990)....................................12

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596 (2007)...............................10

*United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987)...................................13

*United States v. Mares*, 402 F.3d 511 (5th Cir. 2005)..........................................9, 10

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006)................................................10

*United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005)...........................10

*United States v. Solis*, 299 F. 3d 420, 455 (5th Circ. 2002)....................................12

*United States v. Stevens*, 487 F.3d 232, 245-46 (5th Cir. 2007)...............................9

*United States v. Villegas*, 404 F.3d 355 (5th Cir. 2005).......................................9, 10

**Statutes:**

18 U.S.C. § 111....................................................................................................9

18 U.S.C. § 3553(a) .......................................................................................10, 13

18 U.S.C. § 3742 ...................................................................................................1

28 U.S.C. § 1291 ...................................................................................................1

**Rules:**

5TH CIR. RULES 28.2.1...........................................................................................i

5TH CIR. RULES 35.2.1...........................................................................................i

**Sentencing Guidelines:**

U.S.S.G. § 1B1.1 .......................................................................................................12

# <u>STATEMENT OF JURISDICTION</u>

This case arises from the district court's entry of a final judgment of conviction and sentence or violation of a Federal criminal statute. This Court has subject matter appellate jurisdiction pursuant to <u>28 U.S.C. § 1291</u> and <u>18 U.S.C. §3742</u>.

Judgment was entered in this case on June 28, 2019, following a sentencing hearing conducted on that date. <u>ROA.8</u>, <u>ROA.139-143</u>, <u>ROA.354-361</u>. Appellant timely filed a Notice of Appeal on July 8, 2019. <u>ROA.8</u>, <u>ROA.146-147</u>.

## **ISSUES PRESENTED**

1.     The trial court erred in adopting the Presentence Investigation Report, which improperly calculated the Guideline range of punishment; the resulting sentence was outside the Guideline range of punishment, and was therefore unreasonable.

## **STATEMENT OF THE CASE**

On May 30, 2018, at approximately 2:40 a.m., Richard Hunt, an officer at the Federal Correction Institute at Big Spring, Texas (FCI Big Spring) was conducting unscheduled rounds on the floor of the barracks he was assigned to patrol. ROA.230; ROA.423 (para. 5). As he was passing a unit with double bunks, he saw a bright light illuminating a bunk occupied by codefendant Reshawn Moses Leal ("Leal") which Officer Hunt recognized to be inconsistent with any item permitted to inmates, and which Officer Hunt believed to be a cellular telephone. ROA.230-231; ROA.423 (para. 5). Knowing cell phones to be contraband in penal institutions, Officer Hunt proceeded to investigate, prompting Leal to cough and fidget while attempting to hide something under his blanket. ROA.227; ROA.234-235; ROA.423 (para. 6). After Leal denied having contraband, Officer Hunt pulled on a pair of headphones dangling from under the blankets, dislodging a cell phone and causing it to fall to the ground. ROA.235-36; ROA.423 (para. 6); Gov't Exh. 13.

Leal then leapt from his bunk onto Officer Hunt, pinning him against the wall of the unit with his forearm. ROA.236; ROA.432 (para. 7). Officer Hunt activated an emergency signal for assistance, and proceeded to grapple with Leal while ordering him to cease and desist; during this time, Leal was frantically attempting to locate the phone. ROA.236-37; ROA.432 (para. 7). As Leal located the phone, he bent over to

pick it up, putting his shoulder into Officer Hunt's stomach; Officer Hunt placed his foot on the phone while using the altered position to put Leal into a headlock in an attempt to gain control over the prisoner. ROA.237-38; ROA.432 (para. 7). Leal began punching Officer Hunt, landing at least one blow to the face, causing the two to fall to the floor, injuring Officer Hunt's ankle in the process. ROA.238; ROA.432 (para. 7). Leal landed face down, allowing Officer Hunt to get on top of and attempt to restrain Leal while the latter kicked and screamed. ROA.238-39; ROA.432 (para. 8).

What happened thereafter is subject to some dispute; it is undisputed that Defendant-Appellant Jeophrey Raul Murrieta ("Murrieta") got out of his bunk and "got involved" in the matter. ROA.301; ROA.377; ROA.432-3 (para. 8). Officer Hunt testified that Murrieta slammed him in football tackle-like fashion into a wall, knocking the breath out of Officer Hunt and further causing him to strike his head violently, causing disorientation. ROA.239-40; ROA.432-3 (para. 8). Officer Hunt noted particularly a substantial weight/height differential between himself and Murrieta. ROA.240. Officer Hunt indicated that after being hit, he had to use the wall for stability in order to regain his feet, at which point he saw Leal holding the cell phone. ROA.241-42; ROA.433 (para. 8). Officer Hunt instructed both inmates to lay on the ground; both refused, with Leal throwing the phone at the wall close to Officer

Hunt, causing it to break into pieces. ROA.242; ROA.433 (para. 8).

Leal then picked up a piece of the phone, giving it to Murrieta while the two started to walk back to the latter's bunk, whispering to each other. ROA.242; ROA.433 (para. 9). Subsequently, additional correctional officers arrived, detained the two inmates, and recovered several pieces of a broken cell phone. ROA.244; ROA.245 (Gov't Exh. 13); ROA.433 (para. 9).

At trial, Murrieta testified by denying that he physically assaulted Officer Hunt in any way. ROA.304; ROA.307. Murrieta indicated that he "got involved" in order to "stop the assault" and defend Leal against Officer Hunt, using his size to deter Officer Hunt from continuing to attempt to detain Leal and recover the cell phone. ROA.304, ROA.316-317, ROA.433 (para. 13).2 Murrieta initially denied any possession, or even knowledge, of any contraband by himself and Leal, specifically including cell phones. ROA.317-318; ROA.433 (para. 13).

Officer Hunt indicated that he suffered numerous injuries, including a laceration on his right forearm, a bruised abdomen, and pain in his right wrist, left ankle, left jaw, and back. ROA.246-47; ROA.433 (para. 10). After being seen by staff medical personnel at FCI Big Spring, Officer Hunt went to the local hospital, and was diagnosed with a sprained left ankle ligament, hairline fractures in his right wrist, left ankle, and left jaw, and three broken ribs. ROA.248. Amongst those injuries, Officer

Hunt also suffered deep tissue damage to his liver, with half of it shutting down to heal, and with full liver function not fully recovered by the time of trial. ROA.433 (paras. 10 & 16). As a result of his injuries, Officer Hunt missed 45 days of work. ROA.248; ROA.433 (para. 16).

Leal and Murrieta were subsequently charged in a single-count Indictment on November 14, 2018, alleging that the two assaulted Officer Hunt. ROA.11-12. Trial was conducted on March 4, 2019, with the jury returning a verdict of guilty as to the single count of the Indictment. ROA.6; ROA.131.

The Presentence Report ("PSR" or "PSIR") subsequently prepared determined Murrieta's Guideline sentencing range to be 121-151 months, to be followed by one to three years of supervised release, within the statutory range of not more than twenty years imprisonment. ROA.444 (para. 72). This was based on the PSR's finding of a base offense level of 29 and a criminal history category of IV. ROA.444 (para. 72).

The Government adopted the PSR; however, Murrieta filed objections to several of the PSR's assessments, in particular (1) a five-point increase assessed based on Officer Hunt suffering serious bodily injury (as opposed to simple bodily injury); (2) a six-point increase based on the defendant or an accomplice knowingly assaulting a prison official; and (3) the award of two points for obstruction of justice.

-6-

ROA.449-450. An addendum was filed rejecting those objections. ROA.452-455.

The trial court conducted sentencing on June 28, 2019, at which time no additional evidence or argument was presented. ROA.354-361. With the exception of one factual matter not affecting the Guidelines, the trial court overruled Murreta's objections and adopted the PSR and addendum in full. ROA.456; ROA.357. The trial court subsequently sentenced Murrieta to 151 months incarceration, and imposed that sentence consecutive to Murrieta's underlying Federal sentence and to any sentences from pending state criminal matters, and additionally assessed a three-year term of supervised release (with standard and special conditions) along with restitution for Officer Hunt's medical expenses. ROA.358-359. This appeal follows.

## **SUMMARY OF THE ARGUMENT**

After review of the record and the law, the Presentence Investigation Report and the trial Court improperly rejected Murrieta's objections and calculated his offense level as 29, and the resulting sentence of 151 months was outside the properly calculated Guideline range of punishment.

## ARGUMENT AND AUTHORITIES

This case arises from Appellant Jeophrey Raul Murrieta's conviction and sentencing following a jury trial charging him with assault of a Federal officer resulting in bodily injury, in violation of 18 U.S.C. § 111. After a careful review of the record and relevant authority, it is the opinion of counsel that no nonfrivolous basis exists in the record supporting a challenge to the judgment of conviction and sentence imposed by the trial court.

## I.    THE PRESENTENCE REPORT INCORRECTLY CALCULATED THE GUIDELINE SENTENCING RANGE

Since the Supreme Court's holding in *United States v. Booker* rendered the Sentencing Guidelines advisory only, trial courts  have had substantial deference to sentence defendants within the statutory range of punishment, and the trial court is vested with broad discretion to determine the relevant sentencing facts by a preponderance of the evidence. 543 U.S. 220, 125 S.Ct. 738 (2005); *United States v. Stevens*, 487 F.3d 232, 245-46 (5th Cir. 2007), *cert. denied*, 552 U.S. 936; *United States v. Mares*, 402 F.3d 511 (5th Cir. 2005); *United States v. Villegas*, 404 F.3d 355 (5th Cir. 2005). Under the sentencing scheme that has arisen now that the Guidelines

are no longer mandatory, sentencing courts must still take the Guidelines into account when determining a sentence by initially making a proper calculation of the Guideline sentencing range. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596 (2007); *United States v. Smith*, 440 F.3d 704 (5th Cir. 2006); *Mares* at 518-519; *Villegas* at 359. Appellate courts will continue to review *de novo* a district court's interpretation and application of the Guidelines. *Villegas* at 359. Once the Guideline range is determined, the trial court should then determine whether a traditional Guidelines departure is warranted; these considerations result in a "Guideline sentence." *Id.* After making a determination as to the appropriate sentence under the Guidelines, the trial court must then consider the statutory sentencing factors of 18 U.S.C. § 3553(a) to determine whether to impose a Guideline sentence or to vary and impose a non-Guideline sentence. *Gall*, 128 S.Ct. at 596-597. Any resulting sentence is reviewed by this Court under an abuse of discretion standard, whether or not the sentence is within the guideline range. *Gall* at 597.

In reviewing a trial court's determination of underlying sentencing facts, this Court applies the clear error standard in reviewing the district court's factual determinations in applying the Guidelines. *United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005).

**A.    The trial court improperly overruled Murrieta's objections to the presentence report's calculation of the proper Guideline level**

In the case at bar, Murrieta timely lodged objections to the trial court's Guideline calculations which sought to challenge three enhancements: first, a five level increase for the victim suffering serious bodily injury; second, a six-level increase "if the defendant [or accomplice], knowing or having reasonable cause to believe that a person was a prison official, assaulted such official"; and third, a two-level increase for obstruction of justice based upon Murrieta's false statements regarding cell phone possession and usage to FBI Agent David Kindle. ROA.449-450.

Murrieta's first challenge was to the sufficiency of the evidence regarding the five-level assessment for Officer Hunt suffering serious bodily injury during the assault, with Murrieta complaining that there was "[n]o medical expert [who] testified the victim suffered a serious bodily injury." ROA.449. The PSR noted that Officer Hunt suffered liver damage, as a result of deep tissue bruising with the PSR specifically pointing out that Officer Hunt "explained half of his liver shut down in order to heal itself," and that "his liver has not healed completely from the deep tissue bruise" as of the time of the PSR. ROA.246-47; ROA.433-34 (paras. 10 & 16).

-11-

The definition of "serious bodily injury," for purposes of the Guidelines, is provided in the commentary to U.S.S.G. § 1B1.1, providing that said term in part "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty[.]" The Probation Officer filed an addendum to the PSR addressing Mr. Murrieta's objections. ROA.452-455. In said Addendum, the Probation officers reiterates the fact that he sole relied on the victim's own analysis of the extend of the injury to his liver. This is a lay person giving his own understanding of what is the extent of his injury when, in fact, such a conclusion must be made by a medical expert.

When making factual findings for sentencing purposes, district courts "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Solis*, 299 F. 3d 420, 455 (5th Circ. 2002). The crux of ths present appeal is whether officer Hunt's brief explanation of the extent of the injury to his liver bears sufficient indicia of reliability to support the 5-level enhancement. This Circuit has previously rules that under the sentencing guidelines, the party who seeks an adjustment in the base offense level — here, the Government — must prove by a preponderance of the evidence that the adjustment is warranted. *United States v. Alfaro*, 919 F.2d 962, 965 (5th Cir. 1990). The district court is free to consider all relevant evidence — even inadmissible evidence — as long as the

evidence relied upon has "sufficient indicia of reliability to support its probable accuracy." Id. at 964. This Court has previously held that the unsworn assertions of the Government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant. *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987). In the present matter, Mr. Murrieta's argument suggests that the district court erred in accepting the PSR without any additional medical testimony/record to corroborate  Officer Hunt's assertion that his half of his liver stopped functioning. This was a medical complex conclusion which required some indicia of reliability from a medical professional, not a lay person.  As such, the 5-level-enhancement should be stricken.  Moreover, the Court sentenced Mr. Murrieta 151 months in prison, the top of the guideline calculation.  If, in fact, this Court reverses the 5-level enhancement, such a sentence would be outside of the guideline range and , therefore, unreasonable (considering the district court sentenced Mr. Murrieta based on the guideline calculation and did not deviate per any of the factors enumerated in 18 U.S.C. §3553.  \\

\\

\\

\\

\\

## <u>CONCLUSION</u>

Based on the foregoing, Mr. Murrieta prays that this Court grants relief in this matter. Defendant respectfully suggests that the trial court committed plain error by that act. Defendant therefore prays this Court vacate the trial court's judgment, and remand this case for resentencing.

Date: October 23, 2020

Respectfully submitted,
*/s/ Elon Berk*
Elon Berk, Esq.,
Attorney for Jeophrey Murrieta

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this the 16th day of November, 2020, a true and correct copy of the foregoing Brief was served upon all parties via the Court's ECF system, or upon Defendant-Appellant Murrieta at the address reflected in the Bureau of Prisons website.

<u>/s/ Elon Berk</u>
Elon Berk, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this motion complies with the type-volume limitations of FED.R.APP.P. 27(d)(2)(A) because this motion contains 2,954 words according to the word-count functions of Corel WordPerfect X9, excluding the parts of the motion exempted by FED.R.APP.P. 32(f) and this motion complies with the typeface requirements of FED.R.APP.P. 32(a)(5) and type style requirements of FED.R.APP.P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Corel WordPerfect X9 in 14-point Times New Roman font for body text and 12-point Times New Roman font for footnotes

<u>/s/ Elon Berk</u>
Elon Berk, Esq.
