# 19-10765

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**JEOPHREY RAUL MURRIETA,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Abilene Division
District Court No. 1:18-CR-75-2

**APPELLEE'S BRIEF**

Erin Nealy Cox
United States Attorney

Leigha Simonton
Assistant United States Attorney
Texas Bar No. 24033193
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
leigha.simonton@usdoj.gov

Attorneys for Appellee

## **STATEMENT REGARDING ORAL ARGUMENT**

The sole issue Murrieta raises is whether the district court clearly erred by finding that he caused serious bodily injury to a correctional officer after the officer sustained severe liver damage from the attack.  The record is short, and this Court can easily affirm without oral argument.

# **TABLE OF CONTENTS**

**Page**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES ..........................................................iii

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF THE ISSUE ..................................................... 1

STATEMENT OF THE CASE ....................................................... 1

SUMMARY OF THE ARGUMENT ............................................... 6

ARGUMENT AND AUTHORITIES ............................................. 7

    The district court properly applied the five-level enhancement under
    USSG § 2A2.2 because the correctional officer whom Murrieta attacked
    suffered serious liver damage as a result. ............................................. 7

CONCLUSION ....................................................................... 12

CERTIFICATE OF SERVICE ..................................................... 12

CERTIFICATE OF COMPLIANCE ........................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                   **Page(s)**

*United States v. Alcantar*, <u>733 F.3d 143</u> (5th Cir. 2017) ......................................7

*United States v. Harris*, <u>702 F.3d 226</u> (5th Cir. 2012) ................................10, 11

*United States v. Le*, 178 F. App'x 386 (5th Cir. 2006) ......................................7

*United States v. McDaniel*, No. 96-20610, <u>1997 WL 255680</u>
    (5th Cir. Apr. 16, 1997) ..........................................................................8

*United States v. Williams*, <u>610 F.3d 271</u> (5th Cir. 2010) ...................................7

*United States v. Zuniga*, <u>720 F.3d 587</u> (5th Cir. 2013) ......................................7

**Federal Statutes and Rules**

<u>Fed. R. App. P. 4(b)</u> ..........................................................................................1

**Federal Sentencing Guidelines**

<u>USSG § 1B1.1</u>, comment. (n.1(M)) ............................................................. 8, 10

<u>USSG § 2A2.2</u> .................................................................................*passim*

## STATEMENT OF JURISDICTION

This is a direct appeal from a sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 18 U.S.C. § 3742(a). The district court entered judgment on July 1, 2019, and Murrieta timely filed the notice of appeal on July 8, 2019. Fed. R. App. P. 4(b). (ROA.8.)

## STATEMENT OF THE ISSUE

After a jury convicted Murrieta of assaulting a federal officer resulting in bodily injury, did the district court clearly err by applying the five-level increase in USSG § 2A2.2(b)(3)(B) because, as a result of the assault, the victim suffered serious bodily injury—specifically, liver damage as a result of deep tissue bruising?

## STATEMENT OF THE CASE

Murrieta pled guilty in 2017 in the Central District of California to conspiring to distribute methamphetamine and was sentenced to 120 months in prison. (ROA.436.) On May 30, 2018, while serving time at Federal Correctional Institution (FCI)—Big Spring in Big Spring, Texas, he and his cellmate, Reshawn Leal, attacked and injured a correctional officer. (ROA.432-33.) As a result of this assault, a federal grand jury in the Northern District of Texas charged Murrieta and Leal with assaulting a federal officer

resulting in bodily injury.  (ROA.11.)  Murrieta went to trial, and the jury
convicted him.  (ROA.139.)

The PSR explained the relevant facts relating to the assault as follows.
On the date of the assault, the correctional officer, R.H., was working the night
shift.  (ROA.432.)  Around 2:40 a.m., while R.H. was conducting a round in a
double-bunked unit, he saw a bright light illuminating from Leal's upper bunk.
(ROA.432.)  As R.H. approached, Leal sat up and began coughing and
moving around and then yanked a pair of headphones from his ear and
attempted to conceal something under his blanket.  (ROA.432.)  R.H. asked
Leal if Leal had any contraband, and Leal said he did not.  (ROA.432.)  A pair
of headphones fell from under the blanket, and R.H. pulled on the
headphones, causing a cell phone to also fall from under the blanket.
(ROA.432.)

Leal then leaped out of his bunk and on top of R.H, pinning R.H.
against the wall with his left forearm.  (ROA.432.)  R.H. sent a signal for
assistance and gave Leal several verbal commands to stop and get back.
(ROA.432.)  While Leal had R.H. pushed up against the wall, Leal looked
frantically around the cell for the phone.  (ROA.432.)  When Leal spotted the
phone, he moved toward it and dropped his left shoulder into R.H.'s stomach.
(ROA.432.)  R.H. placed his foot over the phone and put Leal in a headlock.

(ROA.432.)  Leal then began to punch R.H., hitting R.H. in the face with a
closed fist.  (ROA.432.)  Both Leal and R.H. fell to the floor, causing R.H. to
injure his ankle.  (ROA.432.)

Leal landed on the ground face first, allowing R.H. to get on top of Leal.
(ROA.432.)  Leal kicked and screamed while R.H. attempted to handcuff him.
(ROA.432.)  Meanwhile, Murrieta got down from his bunk and body slammed
R.H.  (ROA.432-33.)  The impact knocked R.H. into a wall, causing him to hit
his head and lose his breath.  (ROA.433.)  R.H. then crawled to another bunk,
where he was able to stand up.  (ROA.433.)

Once R.H. stood, he saw Leal with a cell phone in his hand.
(ROA.433.)  R.H. instructed Leal and Murrieta to get on the ground, but
neither complied.  (ROA.433.)  Leal then threw the phone at the wall, causing
it to break into pieces.  (ROA.433.)

Leal picked up a piece of the phone, and Leal and Murrieta started
walking back to Murrieta's bunk while whispering to one another.  (ROA.433.)
R.H again commanded that Leal and Murrieta get on the ground, but they did
not comply.  (ROA.433.)  Murrieta smiled at R.H., threw the cell phone at
him, and said, "fetch, bitch."  (ROA.433.)  At one point, Leal came toward
R.H. while Murrieta circled around R.H. to block his exit.  (ROA.433.)  Other

correctional officers arrived on the scene and were able to detain Leal and Murrieta.  (ROA.433.)

Medical records introduced as Government's Exhibit 12 at trial showed that R.H. was taken to a hospital emergency room, where medical staff treated him for a sprain of his left ankle ligament, jaw pain, and contusion of lower back and pelvis.  (ROA.383, 394 (Ex. 12); ROA.108 (court's list of admitted exhibits, including Ex. 12); *see also* ROA.246-48 (R.H. trial testimony; ROA.433 (PSR summary of this information).)

Murrieta was referred to an internal medicine specialist.  (ROA.248.) Records from R.H.'s visit to the specialist on June 21, 2018, which the government produced to defense counsel before trial and marked as Government's Exhibit 11 (but that the government ended up not needing to introduce at trial) specifically noted R.H.'s diagnosis as "[c]ontusion/deep tissue damage to liver."[1]  (ROA.488.)  Because of this injury, the doctor advised R.H. (who had already not been back at work since the date of the assault on May 30, 2018) not to return to work for an additional 14 days. (ROA.490.)

---

[1] Because Exhibit 11 was not admitted at trial, it was not included in the original appellate record.  But these records were disclosed to defense counsel prior to trial and were in the government's trial exhibits, and therefore the government moved to supplement the appellate record with this exhibit.  This Court granted the motion, and Exhibit 11 is now in the supplemental appellate record.  (*See* ROA.487-90.)

In reciting the relevant facts related to R.H.'s injuries, the PSR reported—consistent with these medical records—that R.H. had "deep tissue damage to his liver" and that he was restricted from returning to work for 45 days as a result of the damage. (ROA.433.) The PSR added, apparently based on information the probation officer received from R.H., that R.H. had continuous follow up appointments every six months, and that, as of the PSR's filing, he was still under a doctor's care, as his liver had not healed completely from the deep tissue bruise. (ROA.434.) The PSR reported that R.H. "explained that half of his liver shut down in order to heal itself." (ROA.434.)

The PSR calculated a total offense level of 29. (ROA.435.) This included a five-level enhancement under USSG § 2A2.2(b)(3)(B) because "the victim suffered serious bodily injury." (ROA.435.) The PSR noted that the guideline commentary "define[d] serious bodily injury as the protracted impairment of a function of an organ," and it explained that "R.H. still has residual loss of liver function due to the instant federal offense." (ROA.435.)

Combined with Murrieta's criminal-history category of IV, the total offense level resulted in an advisory guideline range of 121 to 151 months. (ROA.444.) Murrieta objected to the five-point serious-bodily-injury enhancement because "[i]nsufficient evidence was provided to prove a serious bodily injury" as "[n]o medical expert testified the victim suffered a serious

bodily injury." (ROA.449.)  The PSR addendum recommended that the court overrule the objection based on the information about R.H.'s injury in the PSR, which showed that "R.H. still has residual loss of liver function due to the instant federal offense." (ROA.453.)

At sentencing, the court overruled the objection "for the reasons as set forth in the addendum to the presentence report." (ROA.357.)  It then imposed a 151-month sentence.  (ROA.358.)

## SUMMARY OF THE ARGUMENT

Murrietta has not shown clear error.  His sole contention is that the district court erred by relying on R.H.'s lay-person understanding of the extent of his liver damage rather than requiring a medical expert's conclusion on the issue.  But (a) nothing requires information from a medical expert to support the enhancement, and (b) even if such information was required, the government previously disclosed medical records indicating R.H.'s liver damage to defense counsel and admitted some of those records at trial, and the probation officer appears to have relied on those records, along with information from R.H., in preparing the PSR.  This Court can easily affirm.

## ARGUMENT AND AUTHORITIES

**The district court properly applied the five-level enhancement under USSG § 2A2.2 because the correctional officer whom Murrieta attacked suffered serious liver damage as a result.**

### Standard of Review

This Court reviews the district court's factual findings, including the degree of injury sustained to warrant an enhancement under USSG § 2A2.2, for clear error.  *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010); *United States v. Le*, 178 F. App'x 386, 386 (5th Cir. 2006).  "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole."  *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2017) (internal quotation marks omitted).  Therefore, this Court "will find clear error only if a review of the record results in a definite and firm conviction that a mistake has been committed."  *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (internal quotation marks omitted).

### Discussion

Murrieta contends that the district court erred by increasing his offense level under USSG § 2A2.2(b)(3)(B) by five levels based on the correctional officer he attacked, R.H., sustaining "serious bodily injury."  As used in the guideline, "serious bodily injury" includes an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery,

7

hospitalization, or physical rehabilitation." USSG § 1B1.1, comment.

(n.1(M)).  To impair "generally means to diminish or decrease," and "there is

no requirement of duration" in the guideline, meaning there is no minimum

amount of time as to how long the impairment must continue to be considered

serious.  *United States v. McDaniel*, No. 96-20610, 1997 WL 255680, at *3 (5th

Cir. Apr. 16, 1997).

    Murrieta does not dispute the district court's conclusion that R.H.'s

description of his liver damage, if true, constitutes "the protracted impairment

of [an] . . . organ." USSG § 1B1.1, comment. (n.1(M)).  Rather, Murrieta's

sole claim of error is that the court based this enhancement on information the

probation officer received from R.H. about his liver damage instead of

requiring expert medical evidence to corroborate and confirm the damage.  But

this is wrong because (a) ]nothing requires medical evidence, as opposed to

information from the victim, as a prerequisite to applying the enhancement,

and (b) even if such evidence was required, it was present here, as Murrieta's

medical records explain that he had a "[c]ontusion/deep tissue damage to

liver."  This Court can easily reject Murrietta's claim.

    First, the Court can pretermit the issue of whether expert medical

evidence supporting the enhancement was necessary because it was, in fact, a

part of this case and supported the enhancement.  Government's Exhibit 12,

introduced at trial, stated that, after Murrieta was brought to the emergency room on May 30, 2018, the day of the assault, the doctor diagnosed him with "[c]ontusion of lower back and pelvis."  (ROA.394.)  R.H. then visited his primary care doctor, who referred him to an internal medicine specialist, Dr. Shroff.  (ROA.248.)  Government's Exhibit 11—which the government ended up not needing to introduce at trial but that contained medical records that it had disclosed to defense counsel prior to trial—showed that, on June 21, 2018—three weeks after the assault—Dr. Shroff examined R.H. and diagnosed him with "contusion/deep tissue damage to liver."  (ROA.488.)

This information *was in the PSR*, demonstrating the probation officer relied on it to support the enhancement.  Specifically, the ER doctor's diagnosis in Exhibit 12 that R.H. suffered from a "Sprain of unspecified ligament of left ankle, . . . Contusion of lower back and pelvis, . . . [and] Jaw pain," corresponded to the PSR's finding that "R.H. was taken to the hospital, where he was treated by medical professionals for sprain of left ankle ligament, jaw pain, and contusion of lower back and pelvis."  (ROA.394, 433.)  Similarly, the internal medicine specialist's diagnosis in Exhibit 11 of "contusion/deep tissue damage to liver," corresponded to the PSR's statement that "R.H. had deep tissue damage to his liver."  (ROA.433, 488.)  Significantly, the specialist made the diagnosis of "deep tissue damage to

[R.H.'s] liver" almost a month after the May 30, 2018 assault occurred. (ROA.488.)  Therefore, even by the date of that diagnosis in late June 2018, the injury was already "protracted" for purposes of the definition of "serious bodily injury" in the commentary to USSG § 1B1.1.  On this basis, this Court can easily reject R.H.'s claim that the district court's application of the enhancement was not based on a medical expert's diagnosis.

Second, even if this Court were to assume that the PSR's information about the liver damage derived only from R.H.'s statements and not also his medical records, Murrieta cites no support—and the government has found none—for his claim that a medical professional's conclusion was required to support the court's finding of protracted liver impairment.  The guideline and related definition of "serious bodily injury" do not contain any such requirement.  *See* USSG §§ 2A2.4, 1B1.1, comment. (n.1(M)).  Rather, as with other types of factual findings for sentencing purposes, "district courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy."  *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (internal quotation marks omitted).  And, "[g]enerally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations."  *Id.* (internal quotation marks omitted).

A patient's statements of his ongoing medical treatment and condition is surely the type of information that would "bear sufficient indicia of reliability to support its probable accuracy." Moreover, the information R.H. provided to the probation officer about his liver impairment was consistent with what occurred during the attack and the types of injuries he could have suffered from it. (*See supra* pp. 2-5.) Therefore, the district court properly "adopt[ed] th[ose] facts" because they had "an adequate evidentiary basis with sufficient indicia of reliability" and Murrieta did not "present rebuttal evidence or otherwise demonstrate that the information in the PSR [wa]s unreliable." *Id.* (internal quotation marks omitted). For this second, independent reason, Murrieta's claim fails.

11

## CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Erin Nealy Cox
United States Attorney

*/s/ Leigha Simonton*
Leigha Simonton
Assistant United States Attorney
Texas State Bar No. 24033193
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:  (214) 659-8600
leigha.simonton@usdoj.gov

Attorneys for Appellee

## CERTIFICATE OF SERVICE

I certify that this document was served on Murrieta's attorney, Elon Berk, through the Court's ECF system on December 11, 2020, and that: (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Leigha Simonton*
Leigha Simonton

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,330 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Leigha Simonton*
Leigha Simonton